UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MELLISA HUSK

    Plaintiff,

    v.                                           Case No. 4:16-cv-70-JVB-JEM

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

**OPINION AND ORDER**

Plaintiff Melissa Husk seeks judicial review of the Social Security Commissioner's decision denying her disability benefits, and asks this Court to remand the case. For the reasons below, this Court affirms the ALJ's decision.

**A.    Overview of the Case**

Plaintiff alleges that he became disabled on January 18, 2013. (R. at 163.) Her date last insured ("DLI") is December 31, 2017. (R. at 167.) Plaintiff most recently worked as a retail manager, but has not worked since her alleged onset date. (R. at 56–57.) The Administrative Law Judge ("ALJ") found that Plaintiff suffered from severe physical and mental impairments. (R. at 20.) However, the ALJ concluded that she could perform other jobs that existed in significant numbers. (R. at 38.) Therefore, the ALJ denied her benefits. (R. at 39.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

**B.      Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

**C.      Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D.      Analysis**

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, Plaintiff challenges the weight that the ALJ gave to several medical opinions, which Plaintiff

claims corrupted the ALJ's residual functional capacity ("RFC") analysis.

**(1) The ALJ Properly Weighed the Agency Consultants' Opinions**

Plaintiff first complains that the ALJ put too much faith in the Agency consultants, who did not examine Plaintiff. Granted, an ALJ cannot simply accept a non-examiner's opinion at face value. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). In *Goins*, the plaintiff submitted an MRI result that seriously contradicted a consulting physician's opinion, but the ALJ blindly followed the consultant's opinion anyway and, more importantly, attempted to interpret the MRI result herself. *Id*. Here, Plaintiff provides similar smoking-gun evidence: the Agency consultants rendered their opinions prior to the opinions of Drs. Aloman and Rifai. (Pl.s' Br. At 11.) But the ALJ knew that the consultants examined an incomplete record and added additional restrictions to compensate for this. (R. at 35.) There is thus no "uncritical acceptance" here.

The ALJ also noted that the consultants were "well-versed in the . . . disability provisions of the Social Security Act." (R. at 35.) This tilts the scales in favor of accepting the consultants' opinions. 20 C.F.R. § 404.1527(c)(6). Yet, Plaintiff contends, the ALJ never elicited any testimony to prove this expertise. (Pl.'s Br. at 12.) The ALJ did not need to, though, since S.S.R. 96-6p provides that Agency consultants "are experts in the Social Security disability programs." 1996 SSR LEXIS 3, *5. An ALJ is entitled to assume this expertise. *Mullins v. Colvin*, 2014 U.S. Dist. LEXIS 73528, *30 (S.D. Ind., May 29, 2014). Plaintiff, however, reminds this Court that she saw another Agency consultant whose opinion the ALJ discounted, even though that doctor would have had just as much expertise. (Pl.'s Br. at 12.) True, but, at best, this would create a tiebreaker situation that the ALJ would have to resolve. When the ALJ supports her choice with substantial evidence, this Court must defer to that choice. *McKinzey v. Astrue*, 641 F.3d 884, 889

(7th Cir. 2011.) Substantial evidence supports the ALJ's decision to follow the two consultants.

Lastly, Plaintiff argues that the Agency consultants "did not have an explanation for their opinions." (Pl.'s Br. At 12.) Actually, they did. One consultant provided over two paragraphs' worth of citations to the record in a section entitled "Additional Explanation." (R. at 85.) And the other, when instructed to "[c]ite specific facts upon which your conclusions are based," did just that. (R. at 87.) Plaintiff's argument thus falls flat.

**(2)    The ALJ Properly Weighted Dr. Rini's Opinion**

Next, Plaintiff attacks the ALJ's decision to afford Dr. Rini's opinion "little weight." Specifically, Plaintiff accuses the ALJ of misunderstanding the opinion. For instance, the ALJ found that "the only actual opinion [Dr. Rini] gave was that [Plaintiff] could manage her own funds," while at the same time conceding that the Global Assessment of Functioning ("GAF") test that Dr. Rini administered was "opinion evidence." (R. at 36.) True, but the ALJ spent an entire paragraph thoroughly rejecting the validity of GAF scores. *Id*. This is fitting, since the Seventh Circuit has little faith in GAF scores. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting that a GAF score "does not reflect the clinician's opinion of functional capacity"). In fact, the Commissioner herself found that such scores have no "direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000). Even the American Psychiatric Association stopped using GAF scores. *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014). Thus, because the ALJ discounted the GAF score anyway, her error in understanding what constituted opinion evidence was harmless.

Furthermore, the ALJ seemed to accept Dr. Rini's findings. The doctor found that Plaintiff had low-average memory and concentration, along with below-average social

4

functioning. (R. at 473.) The ALJ accounted for these conditions by finding that Plaintiff suffered moderate difficulties in concentration, persistence or pace and by limiting Plaintiff to "simple, routine, and repetitive tasks in a low stress job, which is defined as having only occasional changes in the work setting and occasional decision making required." (R. at 23–24.) Normally, a limitation to "simple, routine, and repetitive tasks" does not accurately encapsulate moderate concentration issues, but the Seventh Circuit is more understanding when, as here, the ALJ adds a "low-stress" requirement. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Plaintiff, however, cites *Walters v. Astrue* to complain that "someone with poor social skills should not have even superficial contact with workers." 444 Fed. Appx. 913, 918 (7th Cir. 2011). *Walters* is distinguishable. There, the plaintiff had "significant difficulties with paranoid thinking and poor social skills even when taking his medication." *Id.* Here, Plaintiff is nowhere near as limited, only having "below average" social functioning. (R. at 473.) Unsurprisingly, the ALJ assigned less-extreme limitations. This Court sees no error here.

**(3)       The ALJ Properly Weighed Dr. Aloman's Opinion**

Plaintiff next sets her sights on Dr. Aloman's opinion, which the ALJ afforded "little weight." (R. at 34.) The ALJ discounted the opinion, in part, because Dr. Aloman "merely checked off boxes on a form," which Plaintiff argues is a "material misstatement of fact." (R. at 34; Pl.'s Br. at 14.) In a hyper-literal sense, Plaintiff is correct: Dr. Aloman examined Plaintiff beforehand and thus did more than simply check boxes. But this Court must "give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). In reality, the ALJ meant that Dr. Aloman checked off boxes without providing any explanation to support her findings. The ALJ is correct. Despite having space in

six of the ten questions for Dr. Aloman to provide comments to explain her answer, in only one of those spaces did she write anything, and she only wrote one word: "anxiety." (R. at 710–12.) Furthermore, she left the final question, "Other Comments," completely blank, (R. at 712). C*f. Goins v. Colvin*, 764 F.3d 677, 678 (7th Cir. 2014) (calling a blank comments section "an important omission"). The ALJ's supposed "material misstatement of fact" was actually a fair characterization of the opinion.

Moreover, a series of checkmarks with no supporting narrative tends to be "weak evidence" when the findings are inconsistent with the record. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). The ALJ found as much, even going so far as to say that Dr. Aloman "relied quite heavily on the subjective report[s]" of Plaintiff. (R. at 34.) Such an opinion is of no value. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). And an ALJ can point to "scant objective evidence" in the record and inconsistencies with the doctor's treatment notes to show that the opinion was "based almost entirely on [the plaintiff's] subjective complaints." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008.) Here, the ALJ noted that Dr. Aloman found that Plaintiff had two ailments that are mentioned nowhere else in the record. (R. at 34.) Indeed, Dr. Aloman's exams were mostly normal. The issues she found were usually related to chest pain, joint issues, dizziness, shortness of breath, and abnormal ranges of motion. (R. at 521, 532, 535, 559, 572.) The ALJ discounted them by pointing out findings of normal gait and muscle strength with intact cranial nerves and negative knee x-rays, among other things. (R. at 28–29.)

Plaintiff also points to several findings and test results, but they indicate mostly mild and sometimes moderate symptoms. (Pl.'s Br. at 15–16.) Moreover, the ALJ analyzed this evidence elsewhere in his decision. (R. at 27–37); *cf. Denton*, 596 F.3d at 425 ("The ALJ specifically addressed all the evidence that Denton points out, though he did not assign the significance to it

that Denton prefers."). Most importantly, as the ALJ notes, these findings do not support the extreme limitation of "[cannot] maintain reliable attendance," especially since Dr. Aloman provided no explanation for this opinion. (R. at 712.) Dr. Aloman also opined that Plaintiff would have concentration issues for at least half of the working day. (R. at 711.) This has even less support in the record. Plaintiff very rarely displayed any mental issues by the time Dr. Aloman rendered her opinion, and even Dr. Rini, an actual psychologist who examined her specifically to analyze her mental conditions, found only moderate limitations at most, which the ALJ adopted. (R. at 35–36.) The ALJ thus supported his weighing of Dr. Aloman's opinion with substantial evidence.

### (4) The ALJ Properly Weighed Dr. Rifai's Opinion

Eventually, Plaintiff's issues led her to surgery, which Dr. Rifai performed. The doctor also rendered an opinion, but it did not impress the ALJ, who assigned it "little" weight. (R. at 35.) Plaintiff argues that, as a treating physician, Dr. Rifai's opinion is entitled to more weight. (R. at 18.) Usually, but here, as the ALJ noted, the doctor had only seen Plaintiff twice when he rendered his opinion. (R. at 35.) The ALJ properly doubted whether the doctor even deserved the "treating physician" designation. *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005) ("Dr. Zondag, who examined White once, fits the definition of a nontreating source"); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 506 (6th Cir. 2006) ("The question is whether [Dr.] Lian had the ongoing relationship . . . *at the time he rendered his opinion*").

The ALJ also showed that the opinion was inconsistent with itself. For instance, according to the opinion, Plaintiff's medication "would cause fatigue or lapses in concentration or memory . . . daily for several times a day," yet Plaintiff had no "problems with stamina and

endurance" that would require more than the standard one-hour break. (R. at 719.) Also, Plaintiff could "be reasonably expected to be reliable in attending" a full-time work week despite "ha[ving] a reasonable medical need to be absent . . . on a chronic basis." (R. at 719–20.) Further supporting the ALJ's conclusion is Dr. Rifai's almost exclusively normal findings in his treatment notes. (R. at 745–58.) Courts allow ALJs to discount internally inconsistent opinions. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004.) That is what the ALJ did here.

Dr. Rifai explained the chronic-absences finding by noting that "patient does have the option of surgery." (R. at 721.) This leads to the ALJ's last major problem with the opinion: it predates Plaintiff's surgery. (R. at 53.) The parties vigorously disputed whether the surgery helped Plaintiff or left her worse off. For example, Plaintiff testified that the surgery left her in more pain than before the surgery. (R. at 61.) Also, Dr. Rifai assigned some limitations after the surgery and never explicitly stated that they were no longer necessary. (Pl.'s Br. at 19.) On the other hand, Dr. Rifai's notes indicate that, post-surgery, Plaintiff enjoyed a 70% reduction in the pain. (R. at 750.) Furthermore, the doctor included the restrictions in two post-surgery visits, but not the third. (R. at 752, 755, 758.) This implies that the restrictions were no longer necessary. *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (approving the ALJ's citation to "an absence of any relevant exertional limitations" to discount the plaintiff's claims); *Evans v. Colvin*, 2015 U.S. Dist. LEXIS 74701, *29 (N.D. Ill., June 10, 2015) (holding that the ALJ properly considered the plaintiff's "reduction and ultimate discontinuation of all pain medication"). Both arguments are reasonable and "adequately supported," but when that happens, the tie goes to the ALJ. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**(5)    The ALJ Properly Assessed Plaintiff's Residual Functional Capacity**

Plaintiff's remaining arguments—that the ALJ ignored or improperly discounted various ailments—require an uncritical acceptance of the opinions of Drs. Rini, Aloman, and Rifai. "But the ALJ need not blindly accept a treating physician's opinion—she may discount it if it is . . . contradicted by other substantial medical evidence in the record." *Henke v. Astrue*, 498 Fed. Appx. 636, 639 (7th Cir. 2012). The ALJ identified enough substantial contradictory evidence to validly discount all three opinions. Plaintiff's arguments also assume that Dr. Rifai's restrictions still applied. The ALJ disagreed, and, as noted, *supra*, this Court must accept the ALJ's conclusion. Lastly, Plaintiff points out that her testimony contradicts the ALJ's findings. It does, which is why the ALJ spent two pages thoroughly scrutinizing Plaintiff's testimony and discounting it by identifying contradictions with the record. (R. at 25–27.) True, a plaintiff's testimony is evidence, but it is not a stipulation of her allegations, so an ALJ can reject them if she "builds an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The ALJ did that here.

### E. Conclusion

The ALJ properly weighed all of the medical opinions before her and supported her RFC analysis with substantial evidence. Accordingly, this Court affirms the ALJ's decision.

SO ORDERED on October 13, 2018.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE